# Gwinner, Appellant, *v.* Union Trust Company of Pittsburg.

*Partnership—Partnership real estate—Deed—Dealing in land.*

1. While it is true that a partnership may exist for the purpose of purchasing a tract of land and selling it out in lots, the land will not take the form of partnership property, except as between the partners, unless the deed or some other writing of record gives notice of that fact.

2. Where two persons purchase land under a secret agreement to divide it into lots and to apply the proceeds from the sale of lots in a particular manner, and the property is taken in the name of one of the persons only, the creditors of the grantee named in the deed have a right to rely upon what is there shown and consider it as his individual property.

Argued Nov. 2, 1909. Appeal, No. 204, Oct. T., 1909, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., July T., 1908, No. 26, dismissing bill in equity in case of Frederick Gwinner, Jr., and Edward W. Gwinner, Executors of Fred. Gwinner, deceased, v. The Union Trust Company of Pittsburg, Assignee of the Estate of Joseph Hastings, and Administrator of the Estate of Joseph Hastings, deceased; The Dollar Savings Fund & Trust Company, Administrator c. t. a. of the Estate of T. Lee Clark, deceased; The South Side Bank of Wheeling, West Virginia; The First National Bank of McKees Rocks, Pa., The Guardian Trust Company of Pittsburg, and The International Savings & Trust Company. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to declare a fund a partnership fund, and for a receiver.

FRAZER, P. J., filed the following opinion:

This bill was filed for the purpose of having certain funds in the hands of the Union Trust Company of Pittsburg, derived from the sale of real estate, declared funds belonging to a co-

partnership consisting of Joseph Hastings and T. Lee Clark, both of whom are now deceased, and (2) to have the partnership declared insolvent and a receiver appointed to collect and distribute the assets of the same. From the bill, answer and proofs we find the following facts:

### FINDINGS OF FACT.

1. Frederick Gwinner, the plaintiff, is and has been for many years a resident of the city of Pittsburg, and the defendants, the Union Trust Company of Pittsburg, and the Dollar Savings Fund & Trust Company, are corporations of the state of Pennsylvania, having their places of business in the city of Pittsburg.

2. William Roseburg and Martha Owen Roseburg, his wife, by deed dated June 6, 1905, and recorded in the recorder's office of Allegheny county, in deed book, volume 1401, page 88, conveyed to Joseph Hastings the real estate described in the second paragraph of plaintiff's bill, the consideration therefor being $147,500, of which $47,500 was paid in cash and the balance secured by a purchase money mortgage on the premises, payable in three years, which mortgage was subsequently, on September 12, 1905, assigned to the Reliance Life Insurance Company.

3. The property referred to in the previous finding was purchased by T. Lee Clark and Joseph Hastings, the title being placed in the name of Hastings for the reason that Clark did not wish to be generally known in the transaction. The purchase was made for speculation under a parol agreement between Clark and Hastings, under which the property was to be subdivided into lots and sold for their joint profit.

4. The cash payment of $47,500 was paid out of the fund borrowed by Clark and Hastings from the Bank of Pittsburg, National Association, on their joint note for $50,000, dated June 14, 1905, payable in four months, which note was indorsed by plaintiff for the accommodation of the makers. To secure plaintiff against loss by his indorsement Clark and Hastings each assigned to him as collateral security 1,200 shares of the capital stock of the Ohio Valley Water Company.

5. The net proceeds of the note discounted in the Bank of Pittsburg, National Association, amounted to $48,958.33, and was drawn from the bank on a check dated June 14, 1905, signed by T. Lee Clark and Joseph Hastings, and deposited in the Enterprise National Bank of Allegheny, of which Clark was cashier, in an account opened June 15, 1905, and designated "Joseph Hastings Special." The account of "Joseph Hastings Special" was kept separate and distinct from the individual accounts of Joseph Hastings and T. Lee Clark, and was also a separate and distinct account from the copartnership composed of Clark and Hastings.

6. In pursuance of the understanding or verbal agreement between Clark and Hastings, the Roseburg property was surveyed and subdivided into building lots, a plan prepared and recorded in the recorder's office, and the streets graded, but no sales of lots were made in the lifetime of either Clark or Hastings. The engineer who subdivided the property was employed by Clark and Hastings jointly, both of whom visited the property from time to time while the work of surveying and grading the streets was being done, and gave the directions concerning the same, and they also jointly negotiated with a tenant upon the premises for the purchase or cancellation of his lease, and acted together in other matters relating to the property, both before and after its purchase by them.

7. Deposits were made in the account of "Joseph Hastings Special" by both Clark and Hastings; the cash payment of purchase money, the expense of preparing the property for market, the amount paid the tenant for his lease, and a payment of interest on the purchase money mortgage amounting to $1,194.45, were paid out of this account by checks, usually signed by both Clark and Hastings.

8. The $50,000 note held by the Bank of Pittsburg, National Association, was taken up at maturity, by a note for $40,000, dated October 16, 1905, payable in four months, and made by T. Lee Clark and Joseph Hastings, individually, the balance of the amount being paid chiefly by a loan obtained from the Second National Bank of Allegheny on a four months' note for $10,000, dated October 16, 1905, made by T. Lee Clark to the

order of Joseph Hastings, and by Hastings indorsed. Both of these notes were indorsed by plaintiff for the accommodation of Clark and Hastings, the proceeds of the $10,000 note being deposited in the account of "Joseph Hastings Special," in the Enterprise National Bank, and a check of the same date drawn on the Enterprise National Bank in favor of the Bank of Pittsburg, National Association, for the difference between the original $50,000 note and the proceeds of the $40,000 renewal note, that check being drawn by Clark and by him signed "Hastings & Clark," and charged to and paid out of the account of "Joseph Hastings Special."

9. The Enterprise National Bank having failed, and Clark having died insolvent on October 18, 1905, the Dollar Savings Fund & Trust Company, defendant, was appointed by the register of wills of Allegheny county administrator of his estate, and still continues in this office.

10. Joseph Hastings, being insolvent, executed and delivered to the Union Trust Company of Pittsburg, defendant, a deed of voluntary assignment for the benefit of creditors, dated December 16, 1905, and included in that deed the Roseburg property. Hastings subsequently died insolvent, and the Union Trust Company of Pittsburg was appointed by the register of wills of Allegheny county, administrator of his estate.

11. The Union Trust Company, as assignee of Joseph Hastings, sold the Roseburg property as the individual property of Joseph Hastings, subject to the purchase money mortgage of $100,000, which mortgage was assumed by the purchaser, for the sum of $50,220, which sum it holds under claim of title by the deed of assignment from Joseph Hastings to it, and has included that sum in its account as assignee filed in this court.

12. Neither the $40,000 note held by the Bank of Pittsburg, National Association, nor the $10,000 note held by the Second National Bank of Allegheny was paid at maturity by the representatives of Clark and Hastings, they both having died before the maturity of the notes, and plaintiff as indorser thereon, having been notified of nonpayment and the notes having been duly protested, has since paid the amount of each note to the holder thereof, to wit, in all the sum of $50,000.

13. On March 6, 1907, a written agreement was entered into between plaintiff and the Union Trust Company of Pittsburg, assignee of Joseph Hastings, the receiver of the Enterprise National Bank, and the administrator of T. Lee Clark, deceased, under and by virtue of which plaintiff was authorized to sell at public sale at the Pittsburg Stock Exchange the 2,400 shares of stock of the Ohio Valley Water Company held by him as collateral security, and credit the net proceeds from the sale of such stock on the indebtedness of $50,000 incurred by him as indorser on the two notes above referred to; that the stock was duly advertised and sold at public sale as provided in the agreement for the sum of $18,975.04, that being the highest price that could be realized for the same. Plaintiff has also received on account of his indebtedness the sum of $511.21 from the estate of T. Lee Clark, and there is now due and owing to plaintiff on account of his indorsement of the notes above referred to the sum of $50,000, less the sum of $18,975.04 received from the sale of the Ohio Valley Water Company stock, and the sum of $511.21 received from the estate of T. Lee Clark, with interest on the balance.

14. At the time of the assignment by Hastings to the Union Trust Company of Pittsburg the account of "Joseph Hastings Special" in the Enterprise National Bank was overdrawn to the extent of $5,320.79, and the Roseburg property, which was included in the assignment, was the only property or estate from which that overdraft could be realized.

15. Clark and Hastings, from the time they began negotiations for the purchase of the Roseburg property until the death of Clark, acted together in the transaction and dealt with the property as their joint property, and also treated the moneys raised and used in making payments thereon as their joint funds.

16. Hastings and Clark had together bought and sold real estate for a number of years, the title to the property so purchased by them having always been taken in the name of Joseph Hastings. A number of transactions so made were made by them as copartners under the name of the Hastings Land Company. There is no allegation or testimony tending

to show a written agreement between Clark and Hastings forming a partnership known as "Joseph Hastings Special" or that such agreement existed.

17. Plaintiff, at the time he indorsed the notes above referred to, had known both Clark and Hastings for a number of years and considered them financially solvent.

18. Plaintiff, in February, 1908, proved the two notes above referred to before the auditor appointed to distribute the estate of Joseph Hastings, and also sought to prove the same before the auditor appointed to distribute the estate of the Hastings Land Company. He also proved his claim on these notes against the estate of T. Lee Clark at the audit of that estate in the orphans' court of this county, the claim being proved against T. Lee Clark individually and as a member of a partnership composed of T. Lee Clark and Joseph Hastings.

19. On or about June 1, 1906, W. I. Berryman, trust officer of the Union Trust Company, assignee, brought to the attention of Frederick Gwinner, Jr., a son of plaintiff, the matters alleged in the bill regarding the Roseburg property and the account designated "Joseph Hastings Special," and requested him to report them to his attorney, which he did. At that time both plaintiff and his son had access to the books of the Enterprise National Bank and to all other record evidence of importance produced by them at the trial of this case.

20. Plaintiff offered as his excuse for his delay in instituting these proceedings his illness and also his inability to sooner procure competent evidence necessary to support the facts alleged in his bill of complaint, his contention being that the bill in this case was filed without delay after having obtained what he was advised by his counsel was competent evidence to support his complaint.

### CONCLUSIONS OF LAW.

That Joseph Hastings and T. Lee Clark purchased the Roseburg property as copartners is very doubtful. The testimony tending to show a partnership between them in that transaction is not convincing. While it appears that both were interested in the venture, joined together in raising the funds to

make the cash payment on the purchase, and opened an account in the Enterprise National Bank in the name of "Joseph Hastings Special," out of which all payments on account of the property were made, there is nothing further tending to show a partnership except the testimony of the attorney of both Clark and Hastings to the effect that the Roseburg purchase was separate and distinct from transactions made by the "Hastings Land Company," a partnership composed of Hastings and Clark, and that the proceeds realized from the sale of lots were to be first applied to the payment of the purchase money mortgage, and the surplus of liquidating the notes indorsed by plaintiff. This testimony as a whole fails, in our opinion, to establish a partnership. On the contrary, the inference is strong that the property was held as tenants in common, rather than as partnership property. Had it been taken by them as copartners it seems to us the title would have been taken in the name of the Hastings Land Company.

But whether the testimony does or does not establish a partnership in this case we think is immaterial in determining the case. While it is true a partnership may exist for the purpose of purchasing a tract of land and selling it out in lots, the land will not take the form of partnership property, except as between the partners, unless the deed or some other writing of record gives notice of that fact. This is undoubtedly the law in this state, and has been so declared in an unbroken line of cases, beginning with Hale v. Henrie, 2 Watts, 143, and continuing down to the present time. In Hale v. Henrie the court says: "No averment of any right by parole, or by what is still.less, the nature of the funds which pays, or the uses or purposes the property is applied to, can be allowed to stamp a character on the title inconsistent with that appearing on the deed and record to the prejudice of third persons." In McDermot v. Laurence, 7 S. & R. 438, it is said: "After a review of the American and English cases on the subject, where partners intend to bring real estate into the partnership stock, we think that intention must be manifested by deed or writing placed on record, that the purchasers may not be deceived." In Stover v. Stover, 180 Pa. 425, the court says: "It is settled

that when two or more persons who are partners take title to land as tenants in common, the presumption arising from the deed is that they hold the title as tenants in common in equal shares. As between themselves the deed is not conclusive, but they hold in accordance with the facts. As to the purchasers and creditors, they hold in accordance with the record title: Ebbert's Appeal, 70 Pa. 79. Taking and recording a deed as tenants in common gives character to the title of the several holders upon which the public may safely rely. They are bound to take notice of what appears upon the records, and they have a right to act upon the faith of what they find there. Between the partners themselves the records cannot mislead, nor can they change the fact. If real estate is purchased with partnership funds and for partnership purposes, the general rule is that it is thereby made partnership assets. But it is equally well settled that as to purchasers and creditors the deed will control: Ebbert's Appeal, 70 Pa. 79; Appeal of the Second National Bank of Titusville, 83 Pa. 203; Geddes' Appeal, 84 Pa. 482—for the parties will be presumed to have put their title on record in accordance with the facts, and those who deal with them have a right to act upon this presumption. When it comes to a question of distribution of the proceeds of a sale of land so held, the individual creditor of a cotenant will have priority over the firm, claiming by virtue of its title and in contradiction of the deed."

Following the rule laid down in the cases cited, we can reach no other conclusion than that this case is clearly within the rule that no averment of any right by parole or by a secret agreement can be permitted to stamp real property with a quality other than that expressed in the deed. It therefore makes no difference whether the Roseburg property was partnership property or not. The deed was taken in the name of Joseph Hastings, and so long as the title stood upon the records in his name his creditors had a right to rely upon what was there shown and consider it as his individual property. Any other conclusion would be in direct conflict with the authorities above cited. This question, it seems to us, rules this case, and it therefore becomes useless to discuss the other

questions raised. Under the testimony and the law as we understand it this bill must be dismissed.

And now, to wit, April 6, bill dismissed at plaintiff's costs.

*Error assigned* was decree dismissing the bill.

*W. A. Sipe*, with him *W. A. Sipe, Jr.*, for appellant.

*W. W. Stoner*, with him *Samuel McClay*, *John G. Fraser*, *John F. Tim* and *Stonecipher & Ralston*, for appellees.

PER CURIAM, January 3, 1910:

The decree is affirmed on the findings of fact and conclusions of law by the learned president judge of the common pleas.