HARRY C. JONES, Trustee in Bankruptcy of John P. Singleton.

*vs.*

FERDINAND C. DUGAN and JOSEPH N. ULMAN, Receivers.

*Deeds: equitable title; actual interest of parties. Partnerships: individual and partnership property; presumptions. Trustees in bankruptcy: not purchaser for value.*

Where, in pursuance of an agreement between the purchasers of real estate, the deed was taken in the name of one of them, but to be held for the "joint and equal benefit of both," and the excess contribution made by one of them to the consideration, to be considered as a loan to the other, the parties are to be considered as tenants in common, in proportion to their contribution, and in accordance with the agreement.        p.,348

As between the parties to a deed, it is always competent, in equity, to show what was their actual interest.        p. 349

Declarations of a party, favorable to himself, are not admissible, unless made in the presence of the other party, or as a part of the *res gestœ,* or in contradiction of evidence previously given.        p. 350

A trustee in bankruptcy is not a purchaser for value, and can not maintain any greater claim than could the bankrupt.
                                              p.,350

In the absence of proof that the real estate has been purchased with partnership funds, for partnership purposes, the property is deemed to be held by the parties as joint tenants or tenants in common.        p. 351

Where persons, who afterwards become partners, buy land in their individual names, and with their individual funds, before the making of a partnership agreement, the land will be regarded as the individual property of the parties, in the

absence of a clear, explicit agreement, subsequently entered into by them, to make it firm property, or in the absence of controlling circumstances which indicate an intention to convert it into firm assets.                                                    p. 352

Property, not part of the partnership assets, is not within the terms of a decree appointing trustees for the "co-partnership."                                                                p. 353

Property not bought with money of a partnership that did not come into existence until two years later, that was never entered on the partnership books, is not made a part of the firm asserts, merely because it was used for partnership purposes, without the payment of rent.                    p. 352

In general, the testimony of witnesses as to matters that are purely questions of law is not admissible.                    p. 353

*Decided December 4th, 1914.*

Appeal from the Circuit Court for Baltimore County. (HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Henry Zoller, Jr.,* and *Edward M. Hammond* (with whom were *N. Rufus Gill & Sons* on the brief), for the appellant.

*Louis A. Tuvin* and *Clarence A. Tucker,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the eleventh of April, 1907, John Singleton and John Real entered into a written agreement, in which it was recited that Singleton had purchased from Mrs. Mary Meeter for a consideration of $7,000.00 a piece of real property, in Westport, Baltimore County; and that the parties had agreed that Real should have a half interest in it, but that Singleton was then able to contribute but $2,000.00 towards the pur-

chase money. The agreement then makes the following provisions, that the title to the lot should be taken in the name of John Singleton alone; that Singleton should contribute towards the purchase money $2,000.00 and Real $5,000.00, of which $3,500.00 was to be for his share of the purchase money, and $1,500.00 as a loan to Singleton; and that the property was to be held for "the joint and equal benefit of the parties."

Five days later, on April 16th, the purchase was consummated by the execution of the deed. In legal effect the situation was then this: Singleton was the holder of the legal title, the beneficial interest being in himself and Real in accordance with their agreement, the law raising a constructive trust in favor of Real to the extent of his contribution to the purchase money of the land. They were thus practically in the relation of tenants in common of the property in proportion to their contributions and in accordance with the agreement entered into.

About two years after this purchase had been made Singleton and Real became partners in the manufacture of barrels and baskets, carrying on this business under the name of the Westport Veneer Barrel and Basket Company. The manufacturing was done on the property bought in 1907, and continued so to be till October, 1913. There were no written articles of partnership, and the verbal arrangement was apparently very indefinite, the record not containing any statement as to the terms and provisions of the partnership agreement. On October 15, 1913, a bill was filed by Real for a dissolution of the partnership, the appointment of receivers and the winding up of the partnership business. Insolvency was not alleged, but the relief was asked because of irreconcilable differences. There was a consent answer filed at the same time, and upon these a decree was passed appointing receivers. This was followed on the 17th of October by an application in the U. S. District Court to have Singleton declared a bankrupt and on the 20th an adjudication of bankruptcy was entered.

The receivers appointed by the Circuit Court for Baltimore County proceeded promptly to make sale of the effects of the partnership, including the land acquired from Mrs. Meeter and standing in the name of John Singleton. A sale having been reported the Trustee in Bankruptcy intervened and excepted to the sale, and it is from the ruling of the Court upon such exceptions, and the rulings of the Court upon certain questions of evidence reserved during the hearing, that the case comes before this Court.

The important question in the case is whether the land involved was the property of John Singleton, individually, in which case it would of course pass to his trustee in bankruptcy; or whether it was the property of the partnership, in which case it would pass to the receivers; or whether at the time that John Singleton was adjudicated a bankrupt it was the property of John Singleton and John Real as tenants in common, in which case only the individual interest of Singleton would pass to his trustee in bankruptcy and the remaining undivided interest would remain in John Real.

There is great conflict among the decisions upon questions of this character, and an excellent collection of them will be found in two elaborate notes, one to be found in *Robinson Bank* v. *Miller,* 27 L. R. A. beginning on page 449 and the other in *Marcum* v. *Terry,* 37 L. R. A. (N. S.), page 889.

In Pennsylvania the doctrine of the common law is more rigidly adhered to than in any other State, and is to the effect that under all circumstances the record title conclusively controls (see *Gwinner* v. *Union Trust Co.,* 226 Pa. 614). In no other State is the right of a party who has contributed the funds, or the greater part of them, with which the property has been purchased, so circumscribed. The weight of authority is that as between the parties it is always competent to show, in equity, what the actual interests were. In a case of bankruptcy the trustee, for some purposes stands in the position of the creditors of the bankrupt and for others in that of the bankrupt himself, and this is in no wise affected

by the amendment of 1910 to the Bankrupt Act. Given its fullest effect that amendment only vests in the trustee in bankruptcy the right of lien which a judgment creditor would have against the property of the bankrupt; *In re Superior Drop Forge & Manufacturing Co.,* 31 A. B. R. 455,—it does not vest in him any right in property which the bankrupt himself could not have claimed.

The 1st, 2nd, 3rd, 4th, 5th and 8th exceptions all arose from rulings of the Court on tenders of evidence to show statements made by Singleton to different parties that he was the owner of the real estate in question. The agreement of the parties of the eleventh of April had already been offered in evidence and the sole purpose of these offers must have been to contradict the agreement of the parties as set out in that paper; moreover none of these offers were pretended to have been made in the presence of Real, and it is a well established rule of evidence that declarations of a party favorable to himself are not admissible unless made in the presence of the other party, or as a part of the *res gestae,* or in contradiction of evidence previously given. *Williamson* v. *Dillon,* 1 H. & G. 444; *Hagan* v. *Hendry,* 18 Md. 177; *Knight* v. *House,* 29 Md. 194; *Thompson* v. *Bowman,* 6 Wall. 316.

There was therefore no error in the rulings of the Court which were called in question by these exceptions. It is perfectly clear that as between Real and Singleton the latter could not have successfully claimed sole and exclusive ownership of the property, and since a trustee in bankruptcy is not a purchaser for value (*In re Sup. Drop Forge & Manufacturing Co., supra,*) he cannot maintain any greater claim than the bankrupt could have done.

Is then the property bought from Mrs. Meeter in 1907 to be treated as partnership property, so as to pass to the receivers? It was not such at the time of the purchase for no partnership then existed, it did not become such by conveyance to the firm for none was ever executed, and there is no evidence of any agreement to that effect as one of the terms of the partnership. In the cases where property held or acquired

by persons who were or subsequently became partners, is deemed and adjudged to have been the property of the firm and not of the individuals, that result has followed as the result of certain acts with regard to it. The acts which are most frequently held as bringing this about are where the property is purchased with partnership funds and used for partnership purposes, or where it is entered upon the books of the firm as one of the assets of the partnership. In the present case the property was not bought with money of a partnership which did not come into existence till two years later, it never was entered upon the books of the firm in any manner at all, but it was used for partnership purposes, and for the use of which no rent apparently was paid. A small shanty on one part of the lot was rented, and the rent so received went for the payment of taxes and expenses. Some improvements were erected for storage and use as a factory, which were paid for in part from money of the firm and in part from money contributed by Real, and the same seems to have been the case with the machinery installed. A wharf was also built and this the testimony shows was paid for by the wharfage collected.

Under this state of facts what is the rule of law applicable? Without citing the very numerous cases, the unmistakable trend of opinion is that which was announced by the Supreme Court in *Thompson* v. *Bowman,* 6 Wall. 316, that in the absence of proof that the real estate has been purchased with partnership funds, for partnership purposes, the property is deemed to be held by the parties as joint tenants or tenants in common. See also *Taber-Prang Art Co.* v. *Durant,* 189 Mass. 173; *Booher* v. *Perrill,* 140 Ind. 529; *Harney* v. *Bank,* 52 N. J. E. 697; *McKinnon* v. *McKinnon,* 5 C. C. A. 530; *Caldwell* v. *Parmer's Admrs.,* 56 Ala. 405. The case of *Robinson Bank* v. *Miller,* 153 Ill. 244, will be found strikingly similar to the present one. In that case the question arose with regard to a mill and four acres of land adjoining. Three persons each held an undivided one-third interest in it, the purchase money came from the separate individuals,

and the property was not entered on the books of the firm, but the firm gave its notes for repairs made on the mill and new machinery purchased. In that case as in this the firm was formed after the purchase of the property, but it was used for the partnership business; the property however was held not to belong to the firm but to the individuals. The Court saying: "When the intention of the partners to convert the land into firm property is inferred from circumstances, the circumstances must be such as do not admit of any other reasonable and satisfactory explanation * * *. The weight of authority seems to support the position that where persons, who afterwards become partners, buy land, in their individual names and with their individual funds before the making of a partnership agreement, the land will be regarded as the individual property of the partners in the absence of a clear, explicit agreement subsequently entered into by them to make it firm property, or in the absence of controlling circumstances which indicate an intention to convert it into firm assets."

In line with this is the decision of this Court in *Union Bank* v. *Mechanics Bank,* 80 Md. 371. In that case the paper mills and farming lands of William H. Hoffman had passed by his will to his children, certain of whom were partners in the manufacture of paper, and the lands so devised to the sons were entered on the books of the firm, and the mills used for the purposes of the firm, but this Court, speaking through JUDGE BOYD, held the individual creditors of the members of the firm to be entitled to a priority over creditors of the firm as to the farming lands, while if the proof showed that the mills were put into the business as part of the common stock and so entered on the books of the firm, then as to them the creditors of the partnership would be entitled to the priority. The very elements thus pointed out are entirely lacking in the present case. The proof is uncontradicted that the land now involved was not entered on the books of the firm, and it entirely fails to show that the land was put into the partnership as a part of the

common stock.   The property cannot therefore be held to have been partnership property, and since not partnership property was not within the terms of the decree appointing receivers for the "co-partnership," and the Circuit Court was without jurisdiction to direct a sale of the same.   This necessarily involves a reversal of the order by which the exceptions to the sale were overruled and the sale ratified.   For the reasons already set forth, the interests in the property are now vested in Harry C. Jones, trustee in bankruptcy of John P. Singleton and John Real as tenants in common; of course the improvements, machinery and tools upon the premises in so far as they were paid for out of moneys belonging to the firm, and have not by reason of their character become fixtures, passed to the receivers of the partnership, and are liable for the debts due by the firm, leaving unimpaired the right of the creditors to proceed against Real individually for any shortage of firm assets to satisfy their claims.

The 6th and 7th exceptions were reserved to the rulings of the Court by which the witnesses Ulman and Real were permitted to state the source from which the money was derived with which the improvements on the property were made.   From what has already been said, it will be apparent that no error was committed in either of these rulings.   The 9th exception was to the refusal of the Court to permit the witness Singleton to answer the question: "Do the agreements as set forth in that paper (the agreement of April 11, 1907) still hold good?"   This was calling on the witness to express an opinion upon a question of law, which the witness was clearly not competent to answer, and the ruling of the Court was correct.

> *Order reversed, and case remanded for such*
> *further proceedings as may be appro*
> *priate, the costs to be paid one-half by*
> *each party.*