VLAMIS ET AL., TRADING AS ELKTON AUTO PARTS, ET AL. v. DE WEESE ET AL.

[No. 212, September Term, 1957.]

(Two Appeals In One Record)

*Decided April 25, 1958.*

*Motion for rehearing filed May 21, 1958, denied May 23, 1958.*

The cause was argued before HENDERSON, HAMMOND and PRESCOTT, JJ., and GRAY, JR., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Paul F. Due* and *B. Conway Taylor, Jr.,* with whom were *Wm. Wilson Bratton* and *William G. Kemp* on the brief, for appellants.

*Floyd J. Kintner,* with whom were *H. Kenneth Mackey, William B. Evans* and *Kintner & Evans* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

In 1921 Warren E. Malin bought a lot in Elkton, erected a building thereon and began to operate a garage and automobile sales agency. In 1922 Malin, for a cash consideration, conveyed to Reuben A. Deibert a one-half interest as a tenant in common in the real estate and personal property used in the business. Deibert died nine months later, leaving a will which gave his widow a life interest and his daughter the re-

mainder interest in all of his estate, real and personal. Malin continued to operate the business and treated the real estate as his own. In 1931 he took a bill of sale or release from Deibert's executrices, his widow and sister, and from Mrs. Deibert individually, of all his deceased partner's interest in the partnership, including the real estate, and soon thereafter mortgaged the property to an Elkton bank. At Malin's death in 1946 the entire fee simple ownership of the real estate was inventoried in his estate. In 1953 his son, as residuary devisee, sold the property to the appellants Vlamis; they in turn sold most of it three years later to appellants Freng, who executed a purchase money mortgage to the appellant, The Elkton Banking and Trust Company.

In 1957, soon after she had heard for the first time that she might have an interest, Deibert's daughter, Chlotilda Deibert De Weese, "individually and as Vested Remainderman under the Will of Reuben A. Deibert, deceased," and her husband, sued the Vlamises, the Frengs and the Bank in ejectment and for money damages, claiming that her father had died seized and possessed of a half interest in the lot in question and that she had inherited that interest under his will at the death of her mother in 1955. The trial court, sitting without a jury, gave judgment against all defendants for the interest in the land and for damages against the Vlamises in the amount of $3,082.50 and against the Frengs in the amount of $2,403.50. The primary appeal is from this judgment and there is a second appeal from the failure of the court, on application of the appellants, to reduce the amount of the money damages. The court declined to act, on the ground that after the entry of the first appeal he was without jurisdiction.

The defense to the ejectment was that Malin and Deibert were partners and, despite the record title, held the real estate as tenants in partnership so that the interest of Deibert, at his death, was personal property that passed to his executrices.

The trial court, after observing during the course of the trial that there would seem to be no doubt that there was a partnership, finally held that there was not, that the real es-

tate had not been shown to be partnership property, and that if it be assumed that a partnership did exist and that the real estate was partnership property, a half interest in the real estate descended to the heirs at law of the deceased partner. The appellants urge that the trial court was in error in all three holdings and that their contentions that Deibert had no individual title to the real estate and, so, his daughter therefore took no title to it under his will, are sound. We agree.

Appellants produced evidence that for the sum of $8,000 Deibert received from Malin a deed dated July 1, 1922, conveying a one-half interest in the real estate in which Malin was conducting the garage and automobile sales business; that the deed was recorded some three weeks later; that four days after the date of the deed an account was opened in the Elkton Banking and Trust Company under the name of "Malin & Deibert"; that the account was very active from its opening until the death of Deibert; that the minute book of the executive committee of the Elkton Banking and Trust Company showed that on October 3, 1922, a note of Malin & Deibert in the amount of $1,900 was approved and accepted for discount (The trial court sustained an objection to the admission of the minute book but we think it was admissible as a record made in the ordinary course of business. Code, 1957, Art. 35, Sec. 59); that seven weeks after the recordation of the deed a traders' license was issued to Warren E. Malin and Reuben Deibert, partners, trading as Malin & Deibert; that the builder of the garage and showroom saw Deibert at the garage almost every evening from July, 1922, until his death; and that Deibert had instructed him how to fix up a stockroom. It was also shown that the business had a Buick tow truck that ran around Elkton on which was painted "Malin & Deibert". Introduced into evidence were conditional contracts of sale given by purchasers of automobiles to Malin & Deibert.

In 1921, soon after Malin bought the property, Albert D. Mackey, a lawyer of Elkton, as trustee, obtained the approval of the equity court to lend Malin $6,000 on a first mortgage on the property. In 1931, eight years after Deibert's death,

an agreement, apparently drawn by Mackey, was entered into with the approval of the Orphans' Court between Malin, of the first part, Mrs. Deibert and Deibert's sister, executrices of the estate of Reuben Deibert, of the second part, Mrs. Deibert, individually, of the third part, and The Elkton Banking and Trust Company, of the fourth part, which recited that "* * * the said Warren E. Malin and Reuben A. Deibert were co-partners trading as Malin and Deibert, and as such owned and operated a garage in the Town of Elkton * * *", that Deibert was a member of the partnership at the time of his death, and that Malin, the surviving partner, had offered to purchase Deibert's interest "* * * in said business and the assets thereof" and to assume liabilities, for the sum of $5,000, and that therefore the parties of the second part "* * * agree to bargain, sell and convey unto the said Warren E. Malin all the undivided one-half interest in and to all the real estate, personal property and business known as Malin and Deibert's Garage * * * together with all the fixtures, tools, appliances, stock, accounts receivable and other assets of said business" for the sum of $5,000, $500 of which was paid in cash with the balance to be paid in monthly instalments of $200. A further provision of the agreement was that the payments were to be made by Malin to "Albert D. Mackey, as Attorney for the said parties of the second, third and fourth parts," and that Mackey was to pay $3,600 to the bank, being the amount due it by the estate, and the balance to the parties of the second part. It was stipulated that from the time of the agreement Malin was to conduct the business, and the profits and losses were to belong to or be borne by him; that all outstanding debts due the firm were to become his property and that he was to pay all debts of the firm.

Whether or not a partnership exists, where there is no express agreement, is to be gathered from the intention of the parties revealed by their conduct and the circumstances surrounding their relationship and the transactions between them. *McBriety v. Phillips,* 180 Md. 569; *Fowler v. Loughlin,* 183 Md. 48, 53. Malin and Deibert exhibited to the public at large many evidences that they were partners.

Deibert was a man of substance and standing in the community. By holding himself out to the bank, to the tax authorities, and to the community at large, as associated in business with Malin, he created a potential personal liability for firm obligations. *Rowland v. Long,* 45 Md. 439; *Blaustein v. Oldfield,* 135 Md. 162. "Any conduct on the part of a person reasonably calculated to lead others to suppose that he is a partner in a particular business amounts to a holding out on his part." *McBriety v. Phillips,* 180 Md. 569, 578, *supra.* It is scarcely to be thought that Deibert would have permitted this unless the partnership in fact existed. The issuance of a traders' license to the partners has significance. Such licenses usually are displayed publicly at the place of business, and Code, 1957, Art. 56, Sec. 5, now requires (as did Code 1912, Art. 56, Sec. 2 in 1922) that the names of all partners of the firm be set out in the licenses and makes it the duty of the Clerk issuing the license to enter the full names of all the members of the co-partnership when such licenses are issued. Deibert obviously was not making a loan. He was investing equity capital, subordinate to two mortgage loans, in a business for financial reward. It must be inferred that such reward was to come in the form of profits from the business, no other fount being indicated or available. Highly pertinent are the recitals in the 1931 agreement by Malin and the executrices of Deibert that the two were partners in the garage and automobile sales business, particularly since Mackey, the lawyer, had been familiar with the ownership of the land from the time it was bought by Malin and was counsel for the estate and for Mrs. Deibert. The record shows that Mackey also was counsel for The Elkton Bank, which under the 1931 agreement was to receive about three-fourths of the value of Deibert's partnership interest, and was the attorney named in the $10,000 mortgage from Malin and his wife to the bank, executed soon after the 1931 agreement. We think it was shown that Malin and Deibert were partners.

We turn, then, to the question of whether the real estate was a partnership asset. The criterion of whether property not held in the partnership name is partnership property is

the intention of the parties to devote it to partnership purposes, to be found from the facts and circumstances surrounding the transaction considered in connection with the conduct of the parties in relation to the property. *Price v. McFee,* 196 Md. 443, 448. In support of this statement of the law, the Court relied on *Johnson v. Hogan* (Mich.), 123 N. W. 891, 897, 898. There it was held that land standing in the name of one partner was a firm asset since it was contributed by him as his portion of the firm assets. The Court went on to say: "The true method of determining, as between the partners themselves, whether land standing in the name of the individuals is or is not to be treated as partnership property, is to ascertain from their conduct and course of dealing the understanding and intention of the partners themselves, which, when ascertained, should unquestionably control. * * * They needed land with timber upon it for the success of their enterprise. * * * The lands selected had at the time no known value except for the timber standing thereon." See also *McCormick v. McCormick* (Mich.), 70 N. W. 2d 706, 708, where the Court held that property in the name of one partner was partnership property and said: "It was not essential that the record title should stand in the names of all partners" and " 'No express agreement is necessary to establish the equitable interest of a copartnership in property held for the benefit of the firm in the name of one of the partners, nor need the circumstances surrounding the transaction or the dealings of the partners with the property be equivalent in weight to an express agreement, if the agreement may be implied from their purpose, business or their dealings with the real estate.' "

In *Cyrus v. Cyrus* (Minn.), 64 N. W. 2d 538, 543, the real estate owned by one partner before the partnership was formed was held to belong to the partnership. Support for the finding was found in the facts that the improvements were made on the land by the partnership, that it was used by the firm, and that the taxes were paid out of partnership earnings.

It is clear that just as record title alone is not controlling, neither is the mere use of real estate by a partnership, in determining whether it is or is not owned by the firm. Each

case must be determined by weighing all its pertinent facts and circumstances. In *Jones v. Dugan*, 124 Md. 346, 352, two men, with their individual funds, bought land. Several years later they formed a partnership and used the land for partnership purposes. It was held that this use alone did not make the land an asset of the partnership. It was pointed out that the proof "* * * entirely fails to show that the land was put into the partnership as a part of the common stock." In *Union Bank v. Mechanics' Bank*, 80 Md. 371, certain real estate inherited by sons from their father before they became partners and not used in the partnership business of paper making, was held to be individually owned. On the other hand, the Court said the paper mills and connected real estate, "necessary for the convenient and proper conduct of the business" could be found to be partnership property if they were put into the firm as part of the common stock. The Uniform Partnership Act says in Sec. 8 (1) of Art. 73A of the Code, 1957, that "All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property."

We think it is clear that the garage and salesroom were originally brought into the partnership stock—indeed were the major part of that stock.

Malin bought an unimproved lot for $4,000 in his own name, borrowed $6,000 from Mackey, as trustee, and $3,000 on a second mortgage (the trial court excluded the deed to Malin and the two mortgages; we think that all three were admissible as record evidence of the background of the transactions under scrutiny), and improved the lot with a garage and salesroom at a cost of some $11,000. The real estate had been bought and the building built for the very purpose of conducting the garage and automobile sales business that the firm carried on. Malin had stocked the building with furniture, equipment, tools and automobiles. For $8,000 he sold a one-half interest in the real estate and "the fixtures, furniture, equipment, stock, tools, cars and other personal property in and about the aforesaid premises, belonging to the said Warren E. Malin, to be held by the said Reuben A.

Deibert in common with the said Warren E. Malin." Malin
continued to be the active operator of the business after he
reduced his interest by one-half. The stock of the business,
before and after Deibert became interested, was the land, the
building and the equipment and automobiles. Malin's con-
tribution was a site, a plant ready to operate, and his future
services as manager. Deibert's contribution was $8,000,
which, together with borrowed money, largely paid for the
plant and equipment which was the stock of the business, both
when it was owned by Malin alone and when it was owned by
the partners.

After the conveyance to Deibert and the opening of the
bank account in the partnership name, the property was fur-
ther improved by the partnership and the property was used
in the conduct of the business, as it had been before the part-
nership was formed. The real estate contributed most of the
value to the interest purchased by Deibert as a partner.

In light of the facts we have noted as indicating that the
real estate was a partnership asset, significance reasonably
can be given to the beliefs of those with knowledge of the
true state of affairs who survived Deibert—Malin, Mrs. Dei-
bert, Deibert's sister, Mackey—evidenced not only by their
declarations but by their acts, that the real estate was a part-
nership asset. The Minnesota Court, in *Cyrus v. Cyrus,
supra,* found comparable evidence of probative weight. The
1931 agreement recognizes that the real estate was a part of
the partnership assets and, in effect, treated Deibert's interest
in it as personal property in "selling" it to the surviving part-
ner. Mrs. Deibert never asserted or claimed any interest in
the property as devisee in the twenty-four years between the
1931 agreement and her death in 1955. Deibert's daughter,
who lived with her mother until the mother's death, and
who has been of age since 1938, had never been given even
an inkling that she might possess any interest in the real
estate and had no such thought until 1956, when the con-
tention she raised in the ejectment suit came to her attention.
It is clear that Mackey, acting as counsel to Deibert's estate
and to his widow, as well as to The Elkton Banking and Trust
Company, regarded and treated the property as a partner-

ship asset, both in the 1931 agreement and in the mortgage which the bank took from Malin and his wife, as fee simple owners of the whole property after the execution of the 1931 agreement.

The appellees stress the fact that in the inventory in Deibert's estate, filed soon after his death, there was included as personalty a "½ interest in personal property—Malin and Deibert Garage", but that a " ½ interest in Malin & Deibert Garage 'real' " was listed as part of the real inventory. We think that whatever significance this may have is more than offset by the 1931 agreement and the fact that at least from 1931, everyone who dealt with the property considered and treated it as belonging to Malin alone, as did he.

Under the Uniform Partnership Act, Code, 1957, Art. 73A, Secs. 25 and 26, the interest of a partner in real estate owned by the firm is personal property. The law is well summarized in 2 *American Law of Property*, Sec. 6.9 at 44: "Though the land be conveyed to the partners or any of them by name without any reference to the firm, if it was acquired as partnership property within the meaning of the statute, every incident and right of ownership, possession, enjoyment, and disposition is in the firm, no interest of the partner in such property passes by devise or inheritance or by his individual deed except in the one case of a conveyance to a purchaser for value without notice, and except for that one purpose the legal title of individual partners is an empty technicality carrying with it no rights or substance. The partner's. interest in the firm, a personal chose in action, is all that he may assign or bequeath and that alone passes to his administrator as personalty on his death intestate."

In *Williams v. Dovell*, 202 Md. 351, 353-357, despite the record title as joint tenants and the provisions of the Uniform Partnership Act, the Court held that the parties had specifically agreed to hold partnership realty as tenants in common. Judge Delaplaine, for the Court, related the history and development of the rule as to partnership real estate. The English courts formulated the theory that partnership real estate is converted into personalty for all purposes and thus title does not pass to the heirs of a partner, and his wife

has no right of dower. Originally the courts in the United States did not follow the English theory. It was noted that the great weight of authority was that partnership realty is impressed with a trust as far as necessary to satisfy partnership debts but (in the language of *Darrow v. Calkins* (N. Y.), 49 N. E. 61, 64): "The portion of the land not required for partnership equities retains its character as realty, and it leaves the laws of inheritance and descent to their ordinary operation." The opinion goes on to point out that the Uniform Partnership Act, adopted in Maryland in 1916, made the English rule the law. It provides that a partner is a co-owner with his partners of specific partnership realty as a "tenant in partnership". The incidents of such a tenancy are: (1) a partner has an equal right to possess the property for partnership purposes; (2) his rights in it are not assignable except in connection with the assignment of the rights of all the partners to all the property; (3) his rights are not subject to attachment or execution, except on a claim against the partnership; (4) his rights in the property vest in the surviving partner; (5) his rights are not subject to dower, curtesy, or allowances to widows, heirs, or next of kin. Code, 1957, Art. 73A, Sec. 25. Relying on the statement of the law we quoted above from the *American Law of Property,* the Court concluded that except in the case of a conveyance to a purchaser for value without notice, "The legal title to partnership property cannot be conveyed, devised or inherited as the individual property of any of the partners * * *. The partner's interest in the partnership, which is a personal chose in action, is all that he may assign or bequeath, and upon his death intestate that interest passes to his administrator as personal property." (The *Williams* case affirmed the decree which declared a surviving partner and the widow of the deceased partner to be tenants in common of a one-half undivided interest in the real estate in litigation. The surviving partner had accounted to the widow for all of the partnership assets except the real estate and a bank account, title in each instance being in the partners as joint tenants. In effect, the parties stipulated that the declaration sought should determine whether the surviving partner owned all the realty or

396

whether the widow had a one-half interest, and the decree would seem to have been in the form it was by reason of the stipulation.)

There is no doubt that the authors of the Uniform Partnership Act intended the Act to mean what *Williams v. Dovell* said it means. William Draper *Lewis, Uniform Partnership Act,* 24 Yale Law Journal, 617, 637. The Courts in the States that have adopted the Act generally agree. *Ewing v. Caldwell* (N. C.), 89 S. E. 2d 774; *Cultra v. Cultra* (Tenn.), 221 S. W. 2d 533; *In re Ostler's Estate* (Utah), 286 P. 2d 796; *La Russo v. Paladino,* 109 N. Y. S. 2d 627; *Blodgett v. Silberman,* 277 U. S. 1, 72 L. Ed. 749.

Since the property here involved was partnership realty, Deibert's daughter inherited no title to it. His estate was entitled to receive the value of his interest in the partnership as a personal chose in action, including the value of his interest as a partner in the firm real estate. The 1931 agreement recognized and gave execution to this right, albeit somewhat inartificially. *Goldberg v. Goldberg* (Pa.), 99 A. 2d 474.

The view we have taken of the case precludes the need of discussing any points not mentioned, and requires a reversal of the judgment.

*Judgment reversed, with costs.*