UNITED STATES of America

v.

CHAPEL CHASE JOINT
VENTURE INC., et al.

Civ. No. JFM-90-1926.

United States District Court,
D. Maryland.

Dec. 13, 1990.

Larry Adams, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Dennis Kirk, Clocum, Boddie, Murry & Kirk, Falls Church, Va., and Richard Tarby, Eisenhower & Tarby, P.C., Fairfax, Va., for defendants.

## MEMORANDUM

MOTZ, District Judge.

This is an action brought by the United States to foreclose liens for federal estate taxes in the amount of $1,366,430 due on the estate of Lorraine D. Hebb ("Lorraine"). Pending before me is a motion for summary judgment filed by the government.

The question presented is whether certain real property known as Walnut Grove Farm was owned by Lorraine at the time of her death or whether, approximately five months prior to her death, she had transferred the farm to the "Walnut Grove Farm Partnership." After Lorraine's death, the farm (in two separate parcels) was sold to defendants, Frank J. DeFrancis and Chapel Chase Joint Venture, Inc.[1] If the farm was owned by Lorraine upon her death and thus was part of her estate, the liens for the unpaid estate taxes are en-

---

1. Frank J. DeFrancis died after this action was instituted, and his personal representatives (Joseph J. DeFrancis and Alec Courtelis) have been substituted as defendants in his stead. Also named as defendants are Fairview Federal Savings & Loan (which financed Chapel Chase's purchase of its parcel) and Frederick and Virginia Bassler (who purchased a lot from Chapel Chase).

forceable against the defendants' properties.[2] *See* 26 U.S.C. § 6324; *United States v. Vohland,* 675 F.2d 1071, 1074 (9th Cir. 1982).

## I.

Walnut Grove Farm was deeded to Lorraine and her husband (who predeceased her) in 1959. The farm consists of two parcels: one of approximately 205 acres, the other of approximately 50 acres. On July 11, 1980, Lorraine executed her last will and testament. In that will she devised the farm to her son, William Hebb, II ("William"). On the same day she also executed a power of attorney giving William the power to act on her behalf with respect to all of her property, including the farm.

A third document which Lorraine signed on July 11, 1980—a certificate of partnership for "Walnut Grove Farm Partnership" —gives rise to the present controversy. Under this certificate William was named as the general partner, and Lorraine, William and Ingrid Hebb (William's wife) were named as the limited partners. The contributions being made to the partnership by each of the limited partners, as stated on the certificate, were as follows: William— forty head of cattle and his interest in a 1976 Pontiac (valued at $23,500); Ingrid— her interest in the 1976 Pontiac and five head of cattle (valued at $4,000); and Lorraine—205 acres of Walnut Grove Farm (valued at $104,100) and $10,000 cash. The certificate further provided that "[t]he contribution of each limited partner is to be returned to him or her upon dissolution of the partnership or upon request of the limited partner." The certificate was filed in the land records of Howard County, Maryland, where Walnut Grove Farm is located.

Lorraine died on December 23, 1980. On December 17, 1981, William, as her personal representative, filed an initial inventory which included neither the farm nor an interest in the partnership as an asset of the estate. On June 11, 1985, he filed a supplemental inventory including the farm in the estate and valuing it at $1,000,000.[3] During the interval between the filing of the two inventories, several events germane to this case had occurred.

1. On November 15, 1982, William, as Lorraine's personal representative and sole heir and beneficiary, mortgaged the entire 255 acres of Walnut Grove Farm to Warfield Brothers to obtain a $35,000 loan.

2. On June 28, 1983, William and Ingrid executed and filed in the Howard County land records a certificate of cancellation of the Walnut Grove Farm Partnership. On the same day William, again as Lorraine's personal representative and sole heir and beneficiary, sold and deeded the 205 acre parcel of Walnut Grove Farm to DeFrancis.

3. On June 29, 1983, William and Ingrid executed an indemnity deed to First American Title Insurance Company in connection with the 205 acre parcel which William had conveyed to DeFrancis. The first "whereas" clause of this deed stated that "said property [the parcel conveyed to DeFrancis] is subject to the payment of Federal Estate and Gift Taxes resulting from the probation of the Estate of Lorraine D. Hebb ..., which said taxes are due and owing to the federal government as of the date hereof."

4. On July 24, 1986, Chapel Chase purchased the 50 acre parcel of Walnut Grove Farm in foreclosure proceedings instituted in connection with the mortgage which William had issued to Warfield Brothers on November 15, 1982.

## II.

■ The government's liens on the defendants' properties, which are of ten years' duration, expire on December 23, 1990. *See generally United States v. Po-*

---

2. The parties have agreed to substitute a bond in the amount of $2,000,000 for the defendants' real properties as the collateral for foreclosure.

3. Although the supplemental inventory does not expressly so state, under Maryland law listed properties are valued on an inventory as of the date of the decedent's death. *See* Md. Est. & Trusts Code § 7–201.

*temken*, 841 F.2d 97 (4th Cir.1988).[4] Therefore, the government has requested an expeditious decision on its summary judgment motion. Defendants oppose this request, characterizing it as a "rush to judgment." However, although they identify two areas in which they suggest that further discovery is necessary, they have not submitted any affidavits controverting the facts tendered by the government or stating reasons, pursuant to Fed.R.Civ.P. 56(f), why they cannot present "facts essential to justify ... [their] opposition." This is not a mere technical default. If defendants had submitted such affidavits, I could have ordered that the necessary discovery be conducted on a expeditious basis prior to my ruling upon the government's summary judgment motion.

In any event, the two areas of further discovery suggested by the defendants do not warrant denial of the government's summary judgment motion.

Defendants first refer to documents in a mortgage foreclosure action instituted in Howard County against Lorraine, William and Ingrid indicating that (1) the plaintiffs in that action named the Hebbs as partners "d/b/a Walnut Grove Limited Partnership," and (2) the Internal Revenue Service filed proofs of claim against the Hebbs in that action for unpaid agricultural employee taxes.[5] At most, these documents indicate that the plaintiffs in the action and the Internal Revenue Service (responding to copies of suit papers which had been sent to it, as required by law, by the Clerk of the Howard County Circuit Court) considered the Walnut Grove Farm Partnership to exist. Nothing in these documents is material to the fact critical to this case: whether Walnut Grove Farm was an asset of the partnership. On that issue defendants have not suggested any point on which discovery is necessary.

■ The second area which defendants argue requires further factual development concerns the valuation of Walnut Grove Farm. The initial fallacy in this argument is that only the taxpayer (here, William, as Lorraine's personal representative) may challenge the amount of the assessment.[6] *See, e.g., Al–Kim, Inc. v. United States*, 610 F.2d 576 (9th Cir.1979); *Graham v. United States*, 243 F.2d 919, 922 (9th Cir.

---

4. The government has levied upon the properties and served notices of seizure upon the defendants, and it contends that these actions are "sufficient to satisfy whatever limitations statute on collection applied, whether or not the lien underlying that levy is thereafter allowed to lapse." *Cf. United States v. Weintraub*, 613 F.2d 612 (6th Cir.1979); *United States v. Marine Midland Bank*, 675 F.Supp. 775 (W.D.N.Y.1987). Because I am entering judgment on behalf of the government before the expiration of its ten-year liens, I need not reach this question. Nevertheless, it would seem appropriate for the Fourth Circuit to decide it in the event that defendants appeal my ruling and obtain reversal of it since, unless the levies and notices resolve any limitations problems, further proceedings on remand would be pointless.

5. A copy of that proof of claim was apparently sent to me while I was the United States Attorney. Citing that fact, defendants moved to disqualify me at the summary judgment hearing held on December 7, 1990. I denied the motion. Proofs of claim were sent by the Internal Revenue Service to the U.S. Attorney's Office only as a matter of routine, and the U.S. Attorney's Office did not represent the Internal Revenue Service in the Howard County action. Thus, disqualification is not required under 28 U.S.C. § 455(b)(3). I also note that although I do not suggest that defense counsel have acted in bad

faith, for me to grant defendants' late-filed disqualification motion might confer a substantial benefit upon defendants in light of the fact that the governments' liens expire on December 23, 1990.

6. At the summary judgment hearing I raised the question of whether, the issue of the amount of the tax assessment aside, successors in interest, such as defendants here, may (at least absent a prior adjudication involving the taxpayer having a collateral estoppel effect upon them) challenge the government's valuation of their property on the ground that they are liable only "to the extent of the value, at the time of the decedent's death, of ... property" which they have acquired. *See* 26 U.S.C. § 6324(a)(2); 26 C.F.R. § 301.6324–1(a)(1) (1990). Upon reflection I am persuaded that the premise of my inquiry is erroneous. Section 6324(a)(2) applies only to non-probate property, not to property (such as I find Walnut Grove Farm to be) which was part of the decedent's probate estate. Under § 6324(a)(1) the lien on such property is for the full amount of the unpaid estate tax, and nothing in the statute suggests that the lien can be enforced against probate property in the hands of a successor only to the extent of the value of that property at the time of the decedent's death.

1957). Moreover, even if defendants were entitled to challenge the government's valuation, the supplemental inventory filed by William valuing the Walnut Grove Farm at $1,000,000 is fully sufficient to establish the farm's value. The $104,100 value of the farm stated in the certificate of partnership on July 11, 1980 is self-evidently inadequate in light of the value stated in the supplemental inventory, which was supported by the sale of a parcel of the farm to DeFrancis. Indeed, although the De-Francis sale occurred approximately two and one half years after Lorraine's death, the sales price would tend to indicate that the government's valuation of the farm at $1,000,000 is, if anything, conservative. As stated above, DeFrancis paid $1,000,000 for only 205 of the 255 acres. Finally, and perhaps most importantly, defendants have presented no affidavits, either from an appraiser or from themselves as the landowners, to demonstrate that the farm was, at the date of Lorraine's death, worth anything less than the $1,000,000 stated on the supplemental inventory.

### III.

■ The parties agree that Maryland law applies to the question of whether the farm was an asset of the Walnut Grove Farm Partnership. At oral argument counsel for defendants conceded that under Maryland law a party seeking to prove that a particular property is a partnership asset has the burden of proving that fact. This concession appears proper in light of the related, well-established Maryland rule that the burden of proof lies on the party asserting the existence of a partnership. *See, e.g., Geo. Bert. Cropper, Inc. v. Wisterco Investments, Inc.,* 284 Md. 601, 399 A.2d 585, 595 (1979); *M. Lit, Inc. v. Berger,* 225 Md. 241, 170 A.2d 303 (1961). Therefore, the government is entitled to summary judgment if defendants have presented insufficient evidence to prove that the farm

was a partnership asset. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, even were the burden on the government to prove that the farm was not a partnership asset, the government would be entitled to summary judgment if, considering all of the evidence on the summary judgment record, it would be entitled to a directed verdict at trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ The only evidence upon which defendants rely to prove that the farm was a partnership asset is the certificate of partnership signed by Lorraine on July 11, 1980. This certificate does not alone establish the fact of a transfer. Whether or not a particular property constitutes a partnership asset depends upon the intention of the parties, *see, e.g., Vlamis v. DeWeese,* 216 Md. 384, 140 A.2d 665 (1958); *Wilen v. Wilen,* 61 Md.App. 337, 486 A.2d 775, 783 (1985), and this intention can be determined only by weighing all of the pertinent facts and circumstances. *Vlamis,* 140 A.2d at 669. Here, considering the evidence as a whole, it is clear that although Lorraine may have intended to transfer the farm to the partnership eventually if it was advantageous to her estate to do so, she did not intend to effect an immediate transfer on July 11, 1980, and did not perfect such an intent prior to her death. Five items of evidence directly bear upon this issue.[7]

First, on the same day that she signed the certificate of partnership, Lorraine also executed (1) a will devising the Walnut Grove Farm, as her own property, to William, and (2) a power of attorney authorizing William to act with respect to her own real property, including the farm. The execution of these documents was inconsistent with an intent to effect an immediate trans-

---

7. In a supplemental memorandum submitted after the summary judgment motions hearing, defendants contend that no evidence other than the documents signed by Lorraine herself are relevant to the question of her intent. I do not agree. It is a reasonable, indeed inescapable, inference that William, as Lorraine's son, was

fully aware of what his mother intended, and that he, as the general partner of the Walnut Grove Farm Partnership, knew what (if any) assets the partnership held. Documents which he executed reflecting his understanding that he was the owner of the farm are therefore material and directly relevant.

fer of the farm to the partnership upon execution of the partnership certificate.

Second, on November 15, 1982, William, as Lorraine's personal representative and sole heir and beneficiary, mortgaged the entire 250 acres of the farm as collateral for a $35,000 loan. He could not have done so if the farm was a partnership asset.

Third, on June 28, 1983, William, again as Lorraine's personal representative and sole heir, sold the 205 acre parcel to De-Francis. It is true that on the same day a certificate dissolving the partnership, executed by William and Ingrid, was filed in the Howard County land records. It is also true that under the terms of the original certificate of partnership, upon the partnership's dissolution, property contributed by a partner was to be returned to her or him. Defendants argue from these facts that upon the partnership's dissolution, the farm went into the estate and then out to William as Lorraine's sole heir and beneficiary, and that William therefore could properly convey the 205 acres to DeFrancis. This reasoning, although imaginative, is extremely attenuated, particularly in light of the fact that no recitals reflecting this series of transfers is stated in the deed to DeFrancis. Furthermore, the argument is strikingly inapplicable to the mortgage made by William on November 15, 1982, prior to the filing of the certificate of cancellation.

Fourth, William, as Lorraine's personal representative, filed a supplemental inventory after the sale to DeFrancis listing the farm as an asset of the estate. He never filed any inventory listing an interest in the Walnut Grove Farm Partnership as an estate asset.

Fifth, the indemnity deed given by William and Ingrid to First American Title Insurance Company on June 29, 1983 in connection with the DeFrancis sale, expressly recites that the property being conveyed to DeFrancis is subject to the payment of federal estate taxes due on Lorraine's estate. This recital effectively concedes what the government is contending in this action, and clearly establishes that the farm was owned by Lorraine at the time of her death.[8]

On this record, regardless of which side has the burden of proof, the government is entitled to the summary judgment which it seeks. A separate order to that effect is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herewith, it is, this 13th day of December 1990

ORDERED

1. The motion for summary judgment filed by the United States of America is granted;

---

8. In their post-hearing memorandum, defendants object to my considering the indemnity deed of trust since the government did not submit it until filing its reply memorandum. However, the reply memorandum was filed prior to the hearing, and defendants made no objection to consideration of the indemnity deed at the hearing. Furthermore, the deed is taken from the land records of Howard County, and defendants do not challenge its authenticity.

Defendants further contend that the "whereas" clause reciting that the property transferred to DeFrancis is subject to the payment of federal estate and gift tax taxes due on Lorraine's estate, merely constitutes an "acknowledgement of the problem" and not a concession that Lorraine owned the property at the time of her death. I do not find this to be so. The deed does not say that the property *may be* subject to the payment of the taxes due but that *it is* subject to those taxes. If the farm was owned by the partnership when Lorraine died, it was Lorraine's partnership share, not the farm itself, which was subject to an estate tax lien under § 6324(a)(1). Even making the assumption (which I believe highly questionable) that the farm would have become subject to the lien if it had come into Lorraine's estate upon the dissolution of the partnership (pursuant to the terms of the original partnership certificate), *cf. Beaty v. United States*, 1989 WL 231306, 1989 U.S.Dist.LEXIS 15839 (E.D.Tenn.1989), the lien on the 205 acres would have been divested, under the last clause of § 6234(a)(2), on June 28, 1983 (the day before the date of the indemnity deed), when they were sold to DeFrancis. Thus, they would not have been subject to the payment of estate taxes due on Lorraine's estate as expressly stated in the deed.

In any event, if I were to disregard entirely the indemnity deed (either because it is not properly on the summary judgment record or because it is inconclusive), the result here would be the same. The other evidence clearly establishes the government's entitlement to summary judgment.

2. Judgment is entered in favor of the United States in the amount of $1,366,430, plus interest and costs; and

3. The parties are to submit a proposed form of order (agreed to as to form) on or before December 20, 1990, stating the precise amount of interest and costs due to the United States, and providing either for foreclosure of the estate tax liens on the $2,000,000 bond held in the registry of the court or staying such foreclosure pending any appeal filed by defendants.