634 A.2d 973

**PROVIDENT BANK OF MARYLAND**

v.

**DeCHIARO LIMITED PARTNERSHIP, et al.**

**No. 122, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 30, 1993.

William R. Dorsey, III (Cleaveland D. Miller, David F. Hannan and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellant.

Benjamin Rosenberg (Aaron I. Lubling, Amy Tucker Sloane, Rosenberg, Proutt, Funk & Greenberg, Linda M. Schuett and Blum, Yumkas, Mailman, Gutman & Denick, P.A., on the brief, for appellee, DeChiaro), Thomas N. Biddison, Jr. (John C. Evelius and Gallagher, Evelius & Jones, on the brief, for appellee, Sellinger), Baltimore, for appellees.

Argued before BISHOP, BLOOM and CATHELL, JJ.

BLOOM, Judge.

The Circuit Court for Baltimore County consolidated for trial an action brought by Provident Bank of Maryland (Provident) against DeChiaro Limited Partnership (DLP) on a cog-

novit note for one million dollars with an action brought by the Reverend Joseph A. Sellinger, J.S. (Fr. Sellinger), a trustee of the Ralph A. and Dorothy DeChiaro Trust Dated December 18, 1972 (the Trust), against Provident for a declaratory judgment as to the enforceability of that note and the underlying debt. From a judgment in favor of DLP and a declaratory judgment that the one million dollar loan by Provident to DLP (in which the Trust held a ninety-nine percent interest as the limited partner) was null and void, Provident appeals, presenting the following issues:

1. Where Provident's loan was made in good faith to DLP, and there was no misuse of DLP's funds, did the trial court err in holding that the loan was made to the DeChiaro Trust in bad faith and was null and void?

2. Where Provident proffered evidence that showed extensive inter-entity loans in the DeChiaro–Rachuba Group, and such evidence supported Provident's contention that there was no misuse of DLP's funds and that Provident acted in good faith, did the trial court err in not admitting said evidence?

3. Where the DeChiaro Trust had no standing to sue, did the trial court err in granting it declaratory relief?

Asserting that the trial court erred in ruling against it on its action for damages for conspiracy, and in order to preserve that and other issues raised but not decided below, Fr. Sellinger cross-appeals, presenting five additional questions, phrased as follows:

1. Do the trial court's findings of fact support its judgment under the terms of the Uniform Fiduciaries Act?

2. Is the judgment appealed from otherwise sustainable under the trial court's findings of fact, pursuant to the provision of Maryland Annotated Code Trusts and Estates Article, § 14–105?

3. Is the judgment appealed from otherwise sustainable under the trial court's findings of fact pursuant to partnership law governing the power of a general partner to bind a limited partnership?

4. Was a *prima facie* case made out before the trial court of civil conspiracy so as to provide alternative grounds for sustaining the judgment?

5. Does the Trustee have standing to participate in these proceedings?

Responding to the issues raised by Provident, we hold that the circuit court did err (1) in treating Provident's loan to the limited partnership as if it were a loan to the limited partner and in basing its judgment on that theory, (2) in excluding evidence of inter-entity loans within a conglomerate of which DLP was a member, and (3) in granting relief to the Trust, which had no standing to maintain an action against Provident. By virtue of our holding that the Trust had no standing to sue Provident, it is not necessary for us to address the questions raised on the cross-appeal.

## Factual Background

Throughout the entire period of time relevant to this case, DLP, which was formed under the Maryland Revised Limited Partnership Act, §§ 10–101 through 10–1105 of the Corporations and Associations Article of the Maryland Code (1975, 1993 Repl.Vol.), was one of sixteen privately held business entities that made up the DeChiaro–Rachuba Group, a prominent commercial and residential real estate development conglomerate. Lawrence R. Rachuba, the general partner, held one percent interest in DLP; the Ralph A. and Dorothy DeChiaro Trust held a ninety-nine percent interest in DLP as a limited partner. The DeChiaro Trust resulted from the 1987 merger of two trusts established by Ralph DeChiaro in 1963 and 1972 for the benefit of his three daughters, Carol Scheffenacker, Roberta Hucek, and Diane Rachuba. Lawrence Rachuba, Ralph DeChiaro's son-in-law, served as trustee of the DeChiaro Trust.

Lawrence Rachuba was also the sole shareholder in Rachuba Enterprises, Inc. (REI), another real estate development company within the DeChiaro–Rachuba Group.

In May of 1988, Provident issued a one million dollar unsecured "guidance" line of credit to DLP. The grant of approval for the line of credit limited the use of the funds to "capital expenditures on projects within the partnership." This guidance line of credit was overseen by Parker Heckner, a vice president of Provident. Heckner previously had dealt with the DeChiaro–Rachuba Group when he was a loan officer for Signet Bank. Lawrence Rachuba, the general partner of DLP, and Richard F. Melfa, the Director of Finance for DLP, executed the Partnership Borrowing Authority. Beginning on 18 May 1989, DLP, through Melfa, obtained four advances on the line of credit. Each advance was initiated by a letter from Melfa on DeChiaro–Rachuba Group stationery, requesting the amount of money needed and describing its intended use. With respect to two requests for advances, totaling $600,000, one on 18 May 1988 and one on 14 November 1988, Melfa stated in his correspondence, "These funds are to be used for our Thomas Run Project." With respect to the other two requests, on 30 August 1988, and 22 December 1988, each for $200,000, Melfa stated, "These funds are to be used for our Pistorio Property." Provident, that is, Heckner, knew that "Thomas Run" and "Pistorio Property" were projects of REI. DLP executed a promissory note for each advance. After each request, Provident placed the funds in DLP's account at Provident Bank. Melfa, on behalf of DLP, would then write a check on DLP's account, payable to REI, noting on one of the check stubs that the money was a "loan." These transactions were recorded in the financial books of the DeChiaro–Rachuba Group as loans from Provident Bank to DLP and as loans from DLP to REI.

On 18 May 1989, DLP consolidated the credit line into one loan and extended the maturity date through 18 July 1989. On 18 July 1989, Melfa executed a promissory note for DLP that extended the loan for an additional year, until 18 July 1990. REI made monthly interest payments directly to Provident through May 1990. DLP paid the June 1990 interest payment, but did not make the interest payment for 18 July 1990. On 30 July 1990 Provident obtained a judgment by

confession against DLP pursuant to the authority contained in the promissory note signed by Melfa for DLP on 18 July 1989.

Meanwhile, beginning about June 1990, major changes in the makeup of the DeChiaro–Rachuba Group took place. Scheffenacker and Hucek had Lawrence Rachuba removed as trustee of the DeChiaro Trust, replacing him with Fr. Sellinger. Scheffenacker replaced Rachuba as general partner of DLP. The DeChiaro–Rachuba Group reorganized into DeChiaro Properties, a new umbrella organization made up from the former DeChiaro–Rachuba entities, excluding REI. In July 1990, Rachuba and REI filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code.

## Procedural Background

After Provident obtained a judgment by confession against DLP in the Circuit Court for Baltimore County, DLP caused the case to be removed to the United States Bankruptcy Court for the District of Maryland. DLP responded to the confessed judgment by filing a motion to vacate it. On or about 18 July 1991, the Bankruptcy Court remanded the case to the Circuit Court for Baltimore County.

Fr. Sellinger, as Trustee for the DeChiaro Trust, brought a separate action against Provident, seeking a declaratory judgment that Provident's claim against DLP was unenforceable, an injunction restraining Provident from pursuing its confessed judgment action, and damages against Provident for conspiring with Lawrence Rachuba to divert trust assets to Rachuba's personal benefit. The circuit court consolidated the two cases, and on 11 February 1992, the court granted DLP's motion to vacate Provident's judgment. Following a non-jury trial on the merits of the consolidated cases, the court entered judgment in favor of DLP in Provident's confessed judgment action and granted Fr. Sellinger's request for declaratory judgment that the Provident's loan to DLP was null and void. The court found that Provident "did not exercise good faith when dealing with the DeChiaro Limited Partnership in Trust in the loan and advancement of funds to the Partnership

relating to the note of July 18, 1989 with full knowledge that the funds were not being used for partnership purposes."

## I

Appellee DLP asserts that there is substantial evidence to support the trial court's findings of fact and that Provident is asking this Court to substitute its judgment on the facts for that of the trial court, referring to Rule 8–131(c), which provides that when an action has been tried without a jury, the appellate court will review the case on both the law and the evidence, but will not set aside the judgment of the trial court on the evidence unless clearly erroneous. The "clearly erroneous" standard for appellate review set forth in Md.Rule 8–131(c) applies to findings of fact, not to a trial court's determination of legal questions or conclusions of law based on findings of fact. *Heat & Power Corp. v. Air Products & Chems., Inc.*, 320 Md. 584, 578 A.2d 1202 (1990); *Davis v. Davis*, 280 Md. 119, 372 A.2d 231, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

We accept the trial court's findings of fact that serve as the basis for its judgments, since there is substantial evidence to support them; we believe, however, that the court erred with respect to its conclusions of law based on those facts.

## II

After hearing all the testimony and reviewing all the exhibits, the court rendered its judgment, which was accompanied by an extensive (twenty-one pages), comprehensive, and scholarly memorandum opinion, in which the court stated what it believed to be the issue before it, set forth its findings of facts, and expounded on the law it deemed to be applicable to the case. Throughout that memorandum opinion, the court made it abundantly clear that it regarded the loan transaction as one between Provident Bank and the DeChiaro Trust, treating the limited partnership, DLP, and the Trust, as a limited partner with a ninety-nine percent interest in DLP, as if they were the same entity. It stated that the issue

is when and under what circumstances one may loan money to a Trust when it has actual knowledge that the money advanced is not to be used for trust purposes.

The court also stated that the outline of consideration appeared to it to be (1) that Provident knew it was dealing with a trust, the limited partnership interest (99%) being in trust, wherefore Provident was charged with knowing that the trustee's authority was limited by the Trust instrument and applicable law; (2) Provident knew that the $1,000,000 it advanced to the Trust was for purposes other than those related to Trust purposes; and (3) Provident did not exercise good faith and cannot collect on its $1,000,000 debt because the Trust had no capacity to contract for the diversion of its funds from a Trust purpose.

In its discussion of the law, the court expounded at length on the common law regarding loans to a trustee who breached the trust and used the borrowed funds for other than trust purposes. The court regarded as dispositive its finding that Provident knew that the borrowed money was being diverted from a trust purpose in that it was being used for the Thomas Run Project and the Pistorio Property development, two projects of REI, of which Lawrence Rachuba was the sole stockholder.

Regarding the loan as if it had been made to the Trust, the court found that Provident did not act in good faith in transferring the loan proceeds to the Trustee, Lawrence Rachuba, in that it was aware that the loan proceeds were to be used for the benefit of Mr. Rachuba's solely owned corporation, REI, instead of being used for Trust purposes. By reason of that lack of good faith, the court held, Provident was not entitled to the protection of Md.Code (1974, 1991 Repl.Vol.), § 15–202 of the Estates and Trusts Article (ET), and thus was liable under case law predating the Maryland Uniform Fiduciaries Act, Title 15, subtitle 2 of the Estates and Trust Article, of which ET § 15–202 is a part, for the defalcations of the fiduciary.

Basically, the Uniform Fiduciaries Act was enacted to protect those who deal in good faith with a fiduciary. ET § 15–202 provides:

A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary is authorized to receive is not responsible for the proper application of it by the fiduciary; and any right or title acquired from the fiduciary in consideration of payment or transfer is not invalid in consequence of a misapplication by the fiduciary.

Because the court found that Provident did not act in good faith under ET § 15–202, DLP, as did the trial court, relies on *Duckett v. Mechanics' Bank*, 86 Md. 400, 38 A. 983 (1897), as an example of the common law rule that was ameliorated by the Uniform Fiduciaries Act. In *Duckett*, a trustee received a check in payment of money belonging to the corpus of the trust estate. On the face of the check were the words *"to deposit* to the credit of Henry W. Clagett, *trustee."* 86 Md. at 405, 38 A. 983. The proceeds of the check were placed in the trustee's individual account by the bank, and the money was then misapplied. The Court in *Duckett* said,

If the bank knowingly aided and participated in Clagett's breach of trust, then the bank is, beyond dispute, as responsible to the new trustees as is the defaulting trustee himself. This liability of the bank depends, however, altogether on the contingency that it knowingly aided the trustee, Clagett, to commit the default of which he was undeniably guilty. If without knowledge of Clagett's misconduct, or without sufficient notice to put it on inquiry that would have enabled it to ascertain that Clagett was mingling with his individual deposits and using it as his own, money that the bank knew or had the means of knowing was trust money; or if the bank was merely the innocent agency through which, without fault or negligence on its part, Clagett depleted the trust estate, then it was not guilty of aiding him in misappropriating the trust fund and is not liable to restore it.

In *Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2d Cir.1986), also relied on by DLP, Citibank was held liable when it

knowingly participated in misconduct of copartners when consideration was paid to a partner, rather than to the partnership, for property owned by a limited partnership.

Reliance on those cases is misapplied. *Duckett* involved a trustee's deposit of trust funds into his individual account; *Whitney* was a case of partnership proceeds being paid to individual co-partners instead of to the partnership. Neither of those situations exists in this case.

■ Here, the trial court erred in treating the Provident loan as if it were a loan to the limited partner instead of to the partnership. In so doing, the court actually coined the expression "Partnership in Trust" in referring to the borrower. Although the Trust, owning a ninety-nine percent interest in the limited partnership, is the entity that would actually bear the loss if Provident were to succeed in enforcing its cognovit note, it and the partnership are distinct entities, and there is no legal basis to treat them as one even though the same person acted as a fiduciary for both entities.[1]

■ A limited partnership is a specialized business structure employed by sophisticated investors when special circumstances make other organizational forms less desirable. A limited partnership is a "creature of statute" designed to "permit a form of business enterprise, other than a corporation, in which persons may invest money without becoming liable as general partners for all debts of the partnership." *Klein v. Weiss,* 284 Md. 36, 50–51, 395 A.2d 126 (1978).

■ Under the Uniform Limited Partnership Act, now codified as Title 10, subtitle 2 of the Corporations and Associations Article of the Maryland Code, partnership property, regardless of how it is titled, is owned by the partnership; what the

---

1. ET § 15–201(c) defines "Fiduciary" as including a trustee under any express, implied, resulting, or constructive trust, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust, or estate.

partners own is an interest in the partnership. *Vlamis v. DeWeese,* 216 Md. 384, 394, 140 A.2d 665 (1958), citing 2 *American Law of Property,* Sec. 6.9 at 44. Md.Code (1975, 1993 Repl.Vol.), § 10–101(*l*) of the Corporations and Associations Article (C & A) defines "partnership interest" to mean "a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." A limited partnership is a partnership comprising one or more general partners and one or more limited partners, C & A § 10–101(i), and is an entity separate and apart from its members, *i.e.,* its general partners and limited partners.

DLP was obviously created to enable the Trust, whose sole asset, according to the court's findings of fact, was its ninety-nine percent limited partnership interest in DLP, to be a passive investor, with limited liability, in an active business venture that developed real estate as a member of the DeChiaro–Rachuba Group.

Although Provident knew that the Trust held a ninety-nine percent interest in DLP, its dealings were with the limited partnership, through its general partner, Lawrence Rachuba. Indeed, among the court's specific findings, based on the documentary evidence, was that the original Loan Submission Request form that started the loan processing transaction identified the borrower as the DeChiaro Limited Partnership, managed by Lawrence Rachuba, General Partner. After approval of the unsecured guidance line of credit for DLP, the four advances by Provident, totalling one million dollars, were not paid or transferred to a fiduciary either for the partnership or the Trust but were made by crediting DLP's account at the bank with the requested and approved sums. The withdrawals from that account were made by Mr. Melfa, an authorized signatory as the Director of Finance for the partnership, presumably upon the instructions of Mr. Rachuba, the general partner.

According to partnership law, the money lent by Provident to DLP was never the property of the Trust. Moreover, since

the loan proceeds were never transferred or paid over by Provident to a fiduciary, ET § 15–202, which concerns payment or transfer of money or property to a fiduciary, simply has no applicability. The loan proceeds were placed in the bank account of the principal, DLP, and were drawn upon by or on behalf of the general partner, a fiduciary for the partnership. The applicable provisions of the Uniform Fiduciaries Act, therefore, are those contained in ET § 15–207, which provides, in pertinent part:

> If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon the account of the principal, the bank is authorized to pay the check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check, or with knowledge of the facts that its action in paying the check amounts to bad faith.

Because the court based its judgment on a finding that Provident acted in bad faith in dealing with a fiduciary of a trust and not on a finding that Provident paid checks drawn by a fiduciary on its principal's account with actual knowledge that the general partner was committing a breach of his fiduciary obligation to the partnership or had knowledge of the facts that payment of the checks amounted to bad faith, we must vacate the judgment.

## III

■ Provident contends that the court erred in not permitting it to introduce into evidence a number of exhibits that detailed extensive loans among the various entities within the DeChiaro–Rachuba Group, including loans from DLP to several of the entities. One such loan arrangement was structurally identical with the DLP–REI loan in this case: the Ralden Partnership (a member of the DeChiaro–Rachuba Group) borrowed money from a bank and loaned it to REI for REI projects in which the Ralden Partnership had no interests.

The court refused to admit the proffered evidence of inter-Group loans because there was admittedly no evidence that Provident relied on those loan documents in making the loan to DLP.

As we have noted, under ET § 15–207 Provident was not liable to DLP for paying the checks drawn by Mr. Melfa on the funds Provident deposited to the account of DLP pursuant to the guidance line of credit unless it had actual knowledge that the general partner was committing a breach of his fiduciary duty to DLP in using the funds for REI purposes or unless it had knowledge that payment of those checks constituted bad faith.

Neither the Uniform Fiduciaries Act nor the Maryland Uniform Fiduciaries Act defines "bad faith." The Uniform Act, however, states in substance that "good faith" means honesty, so that impliedly "bad faith" means dishonesty and not mere negligence.[2] *See* George G. Bogert and George T. Bogert, *The Law of Trusts and Trustees* § 909 (Rev. 2nd Ed.1982).

Consequently, if Mr. Rachuba's use of DLP funds for REI projects was not a breach of his fiduciary obligation, as general partner, to DLP, Provident would be protected by the statute unless it had knowledge of facts that its payment of the checks drawn on DLP's account would amount to dishonesty. The statute would also protect Provident even if Mr. Rachuba, in drawing the checks on the partnership account, was in breach of his fiduciary obligation to DLP unless Provident paid the checks with actual knowledge of that fact

---

2. Section 1(2) of the Uniform Act states, "A thing is done in good faith within the meaning of the Act, when it is in fact done honestly, whether it was done negligently or not." According to the notes of the draftsman, that definition of "Good Faith" was taken verbatim from § 76 of the Uniform Sales Act, § 58 of the Uniform Warehouse Receipts Act, § 53 of the Uniform Bills of Lading Act, and § 22 of the Uniform Stock Transfer Act. "The NIL uses the term 'bad faith' (see particularly sec. 56) but does not define it. The court have held, however, that the test of good faith is the subjective test of honesty, and not the objective test of due care."

or with knowledge of facts that its payment of the checks would be dishonest.

Since Provident concedes that it did not rely on the proffered documents in making the loan to DLP, the documents had little or no relevance with respect to whether Provident *actually knew* that use of the DLP loan funds for REI purposes was a breach of Mr. Rachuba's fiduciary duty to DLP. But those documents would certainly be relevant to the question whether such use of the loan funds *was* a breach of fiduciary duty. If it was, in fact, an accepted custom and practice of the various members of the DeChiaro–Rachuba Group to lend money to other member firms within the Group, even to the point of borrowing funds from a bank in order to lend money to other entities within the group, evidence of that custom and practice might tend to negate any wrongdoing or breach of fiduciary duty by a general partner or corporate officer of one member entity of the Group in making such inter-Group loans to another entity within the Group with borrowed money.

■ DLP argues that, since the trial court was already aware of similar inter-Group transactions, the proffered documents were properly excludable as cumulative evidence. A trial judge does have discretion to exclude evidence deemed to be cumulative. *Lomax v. Comptroller of the Treasury*, 88 Md.App. 50, 54, 591 A.2d 1311 (1991). In this case, however, the trial judge did not exercise his discretion to exclude the proffered documents as being merely cumulative; he excluded the documents on the erroneous legal conclusion that they were irrelevant because Provident did not rely on them in making the loan to DLP.

## IV

The DeChiaro Trust, through its Trustee, Fr. Sellinger, filed its complaint against Provident for declaratory judgment, injunctive relief, and damages on 22 March 1991. Fr. Sellinger asserted that the Trustee had standing to sue Provident as a general partner because the loan submission form dated 19

April 1988 and the Partnership Borrowing Authority dated 19 May 1988 indicate that Lawrence Rachuba held a one percent interest as general partner in his own right and a one percent interest as a general partner as Trustee for the Trust. He also contended that the Trustee had standing under the Md.Uniform Fiduciaries Act, which specifically provides that a third party is liable for wrongfully participating with a trustee or fiduciary in breach of his obligation, ET § 15–203, as well as under Md.Code Ann., Cts. & Jud.Proc. Article § 3–406 (1989), the Declaratory Judgment Act, which provides as follows:

> Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

Finally, he contended that Maryland common law allows limited partners to sue a third party "when there are strong allegations and proof that the third party has wrongfully acted in concert and collusion with the general partner to the detriment of the limited partnership." *McCully v. Radack,* 27 Md.App. 350, 340 A.2d 374 (1975).

The trial court apparently accepted the percentages listed in the Second Amendment to Certificate of Limited Partnership statement dated 4 January 1988, which indicated that Rachuba was the sole general partner having a one percent interest, and Rachuba as Trustee was the limited partner having a ninety-nine percent interest. In its memorandum opinion, the court said, "Lawrence R. Rachuba (Rachuba) the General Partner (1%) and Trustee for the 99% Limited Partnership interest of DeChiaro Limited Partnership...." In that the court found that there was only one general partner at the time in question, Rachuba, Fr. Selling-

er, as successor Trustee for the Trust, had no standing as a general partner to sue.

■ The Declaratory Judgment Act does not confer standing on the Trustee or the Trust. The Trust has no direct interest in the cognovit note; that was executed by the partnership and a limited partner ordinarily has no standing to sue either for damages or a declaratory judgment on behalf of the partnership.

A limited partner may bring a derivative action to enforce a right of a limited partnership to recover a judgment in its favor to the same extent that a stockholder may bring an action for a derivative suit under the corporation law of Maryland. Such an action may be brought if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed. C & A §§ 10–1001.

DeChiaro Limited Partnership, with Scheffenacker as general partner, initiated its defense of the confessed judgment action on 5 September 1990, by removing the case to the United States Bankruptcy Court for the District of Maryland, and filing a motion to vacate. Because the general partner, Scheffenacker, took action to enforce the rights of the limited partnership, Fr. Sellinger, as Trustee for the limited partner, had no standing to bring any actions against Provident.

In *McCully v. Radack, supra,* Judge Gilbert, speaking for this Court, discussed the decision of the New York Court of Appeals in *Lichtyger v. Franchard Corporation,* 18 N.Y.2d 528, 277 N.Y.S.2d 377, 223 N.E.2d 869 (1966), which said:

We think it would be inconsistent with the dormant role of limited partners under our statute if they were permitted to interfere or effect a rescission of any commercial dealings which the partnership had with third parties who were not acting in concert or collusion with the wrongdoing general partners and who had no knowledge of such wrongdoing.

18 N.Y.2d at 537–38, 277 N.Y.S.2d 377, 223 N.E.2d 869. Judge Gilbert found implicit in the holding of *Lichtyger,* that

it is not inconsistent with the dormant role of limited partners to interfere with or effect a rescission of any commercial dealing which the partnership had with third parties, who were knowingly acting in concert or collusion with the wrongdoing general partner, to the detriment of the limited partnership.

27 Md.App. at 359, 340 A.2d 374. This Court held in *McCully* that "limited partners may intervene in a commercial transaction, such as a deed of trust foreclosure, when there are strong allegations and proof that the third party has wrongfully acted in concert with the general partner to the detriment of the limited partnership." 27 Md.App. at 360, 340 A.2d 374. *McCully*, however, involved a situation unlike the circumstances of the instant case. In that action, foreclosure of a deed of trust, the limited partners, alleging breach of trust on the part of the general partner and collusion between the general partner and the trustees under the deed of trust, sought injunctive relief. This Court allowed declaratory relief to be granted for the limited partners because the general partner was not in a position to represent the partnership and, in effect, the limited partners adequately. Fr. Sellinger, at the time he entered into this litigation, did not allege that the general partner, by this time Scheffenacker (who is also a beneficiary of the Trust), was not adequately representing the limited partnership and limited partner. As the general partner for the limited partnership was already vigorously defending the partnership interests and the limited partner was not alleging collusion between Scheffenacker and Provident, Fr. Sellinger's final two arguments in support of standing must fail.

We find that appellee/cross-appellant, Fr. Sellinger, as Trustee of the DeChiaro Trust, did not have standing to sue in this matter, should not have been granted declaratory relief, and has no standing to prosecute the cross-appeal. We shall therefore dismiss the cross-appeal.

We shall vacate the order of the circuit court granting judgment in favor of the defendant DeChiaro Limited Partnership and remand for a new trial in that case, and we shall

reverse the declaratory judgment declaring that the $1,000,000 loan of 18 July 1989 from Provident Bank of Maryland to DeChiaro Limited Partnership is null and void.

CROSS–APPEAL DISMISSED. JUDGMENT IN FAVOR OF DeCHIARO LIMITED PARTNERSHIP VACATED AND CASE REMANDED FOR NEW TRIAL. DECLARATORY JUDGMENT REVERSED.

COSTS TO BE PAID ONE–FOURTH BY APPELLEE DeCHIARO LIMITED PARTNERSHIP AND THREE–FOURTHS BY THE TRUSTEE OF THE RALPH A. AND DOROTHY DeCHIARO TRUST DATED DECEMBER 18, 1992, APPELLEE AND CROSS–APPELLANT.